**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

XIAMEN HENGSHENGCHANG
IMPORT & EXPORT CO., LTD.,

Plaintiff,

v.

SUMMIT RIDGE TRADING LLC,

Defendant.

Case No. 1:26-cv-03945

**JURY TRIAL DEMAND**

**COMPLAINT FOR DAMAGES UNDER 15 U.S.C. § 1120, DECLARATORY JUDGMENT, CANCELLATION OF TRADEMARK REGISTRATION, AND TORTIOUS INTERFERENCE**

Plaintiff Xiamen Hengshengchang Import & Export Co., Ltd. ("Hengshengchang") brings this action against Defendant Summit Ridge Trading LLC ("Summit") and alleges as follows:

## NATURE OF THE ACTION

1. This action arises from a fraudulently procured trademark registration obtained using Plaintiff's own Amazon product listing as purported evidence of trademark use by an unrelated applicant. On December 12, 2025, Andre Walker submitted Plaintiff's Amazon listing for ASIN B0C4T46P7V, expressly identifying "Amoy-baby" as the seller, to support his application for the PNAEONG trademark. Walker later assigned the application to Summit, which obtained U.S. Trademark Registration No. 8,325,120 (the "'120 Registration") and subsequently used that

registration to file trademark infringement complaints against Plaintiff—the very seller whose listing had been submitted to obtain the registration.

2. Order records for the Amoy-baby storefront establish sales of PNAEONG-branded products in April 2023, before Walker's claimed first-use date of May 10, 2023. Hengshengchang currently operates the Amoy-baby storefront with the authorization of Zhang Li ("Zhang"), the prior registered owner of the PNAEONG trademark.

3. Summit's enforcement activity is part of a broader pattern of coordinated trademark applications and assignments involving Amazon product listings associated with existing sellers. Hengshengchang seeks a declaration of non-infringement, cancellation of the fraudulently procured '120 Registration, and relief for the resulting interference with its Amazon business.

## PARTIES

4. Hengshengchang is a company organized under the laws of the People's Republic of China, with its principal place of business in Xiamen, Fujian Province, China. It operates the Amoy-baby storefront on Amazon.com. Zhang Li, the former registrant of U.S. Trademark Registration No. 5,622,050 for PNAEONG, is Hengshengchang's legal representative and a shareholder. Hengshengchang uses the PNAEONG mark with Zhang's authorization.

5. According to United States Patent and Trademark Office ("USPTO") records, Summit is a limited liability company organized under the laws of New

Mexico, with a listed address of 1209 Mountain Road Pl NE #11039, Albuquerque, New Mexico 87110. Summit is the record owner of the ’120 Registration. Ex. C.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and 15 U.S.C. § 1121 because this action arises under federal trademark law, including 15 U.S.C. § 1120. The Court may grant declaratory relief under 28 U.S.C. §§ 2201–2202 and determine rights to registration and order cancellation under 15 U.S.C. § 1119. This Court has supplemental jurisdiction over the related state-law tort claim under 28 U.S.C. § 1367(a).

7. This Court has personal jurisdiction over Summit because Summit is organized under the laws of New Mexico and is therefore at home in this State for purposes of general personal jurisdiction. USPTO records identify Summit as a New Mexico limited liability company. Ex. C.

8. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and (c)(2) because Summit, the sole defendant, resides in this District for venue purposes by virtue of being subject to personal jurisdiction here.

## FACTUAL ALLEGATIONS

9. Hengshengchang sells PNAEONG-branded apparel through its Amoy-baby Amazon storefront with Zhang’s authorization. Zhang, who acquired ownership of the PNAEONG mark and its associated goodwill in 2019, authorized Hengshengchang to use the mark in connection with the sale of apparel and

exercised control over the nature and quality of the goods sold under the mark. Hengshengchang's authorized use of PNAEONG therefore inured to Zhang's benefit.

10. Order-management records for the Amoy-baby storefront reflect sales of PNAEONG-branded pajama sets on April 16, April 20, and April 26, 2023. These transactions predate Walker's claimed first-use date of May 10, 2023 and his December 12, 2025 application. Ex. G.

11. On December 4, 2018, the USPTO registered PNAEONG as U.S. Trademark Registration No. 5,622,050 (the "'050 Registration") for Class 25 goods, including pajamas, trousers, and yoga pants. On January 29, 2019, the original registrant assigned the mark and associated goodwill to Zhang; that assignment was recorded on February 15, 2019. Ex. A.

12. The '050 Registration was administratively cancelled on June 20, 2025, for failure to file an acceptable declaration under Section 8 of the Lanham Act. That cancellation did not, by itself, extinguish Zhang's common-law trademark rights in PNAEONG. Zhang continued to use the mark in U.S. commerce through authorized users, including Hengshengchang, which continues to offer PNAEONG-branded apparel through its Amoy-baby Amazon storefront. Exs. A, G, H.

**Walker's Fraudulent Use of Hengshengchang's Amazon Listing as a Trademark Specimen**

13. On December 12, 2025, Andre Walker filed U.S. Trademark Application Serial No. 99/545,943 for PNAEONG under Section 1(a) of the Lanham Act, claiming ownership of the mark and use in commerce since at least May 10,

2023. The application identified the goods solely as "Pajamas" in International Class 25. Ex. B.

14. As purported evidence of his trademark use, Walker submitted an Amazon listing for ASIN B0C4T46P7V, describing the product as "PNAEONG 3 Pack Women's Cotton Nightgown Sleepwear Short Sleeves Shirt Casual Print Sleepdress." The listing, accessed on December 8, 2025, identified "Amoy-baby" as the seller and categorized the product under "Nightgowns & Sleepshirts," rather than expressly identifying it as pajamas. Exs. B, C.

15. Amoy-baby is Hengshengchang's Amazon storefront, not Walker's. The storefront's seller profile identifies its business name as "xiamenhengshengchangjinchukouyouxiangongsi," the pinyin transliteration of Plaintiff's Chinese corporate name. Ex. H.

16. Walker's claimed first-use date of May 10, 2023 matches the "Date First Available" shown on the Amoy-baby product page. Although the page URL identifies ASIN B0C4T46P7V, the product details for the selected variation identify ASIN B0C4T6BRVT. Exs. B, H. On information and belief, Walker derived his claimed first-use date from the Amoy-baby listing rather than from any use of his own.

17. Neither Walker nor Summit owned or operated the Amoy-baby storefront. Neither Zhang nor Hengshengchang transferred the PNAEONG mark to Walker or Summit, authorized either to use the mark, or permitted Walker to rely

on Amoy-baby's commercial activities as evidence of his own trademark use. Nevertheless, Walker's application represented that he owned PNAEONG, that the mark was in use in commerce, and that the submitted specimen demonstrated qualifying use attributable to him. On information and belief, Walker knowingly caused these materially false representations to be submitted with the specific intent to deceive the USPTO. Ex. B.

18. On June 11, 2026, the attorney who signed the original application declaration filed a Withdrawal of Attorney expressly disavowing its verification and electronic signature and declining to endorse the accuracy of the application's factual representations or specimens. Ex. F.

19. On June 20, 2026, Walker assigned the pending PNAEONG application to Summit "as a gift, without monetary consideration." In the assignment agreement, Walker represented and warranted that he was the sole and exclusive owner of PNAEONG and that the mark was free of any licenses or other claims. The assignment was recorded on June 20, 2026, and the USPTO issued Registration No. 8,325,120 in Walker's name on June 30, 2026. Ex. C.

20. Summit subsequently asserted the resulting registration through repeated Amazon trademark infringement complaints against Hengshengchang, the operator of the very storefront whose product listing Walker had submitted as evidence of his own trademark use. Exs. B, C, E.

**Related Trademark Applications and Coordinated Enforcement Conduct**

21. USPTO prosecution and assignment records reveal a pattern involving six Section 1(a) trademark applications filed by different individuals in December 2025. Each application relied on an Amazon product listing identifying a seller other than the named applicant, and all six applications were assigned to Summit on June 20, 2026.

22. The six applications and their corresponding Amazon specimens are:

(a) **PNAEONG**, Serial No. 99/545,943, filed December 12, 2025, by Andre Walker, using a specimen identifying "Amoy-baby" as the seller;

(b) **AIKVSXER**, Serial No. 99/539,347, filed December 10, 2025, by Brandon Carter, using a specimen identifying "ZRUI US" as the seller;

(c) **AOKOSOR**, Serial No. 99/549,668, filed December 16, 2025, by Bryce Anderson, using a specimen identifying "Aokosor" as the seller;

(d) **CARTIST**, Serial No. 99/549,663, filed December 16, 2025, by Trevor Hayes, using a specimen identifying "Cartist-US" as the seller;

(e) **GRCABEIR**, Serial No. 99/556,727, filed December 19, 2025, by Marco Alvarez, using a specimen identifying "F_noble" as the seller; and

(f) **POWERTY**, Serial No. 99/570,782, filed December 30, 2025, by Colton Ramirez, using a specimen identifying "Powerty-US" as the seller.

23. All six applications were associated with the same attorney, Divya Kannegenti, who filed Withdrawals of Attorney on June 8, 2026 (AIKVSXER); June 11, 2026 (PNAEONG); June 15, 2026 (AOKOSOR and CARTIST); and June 16, 2026 (GRCABEIR and POWERTY). In substantially identical withdrawals, counsel expressly disavowed the original verifications and electronic signatures and

declined to endorse the accuracy of the applications' factual representations or specimens. On June 20, 2026, after these withdrawals, all six applicants executed assignments transferring their respective applications to Summit, and all six assignments were recorded with the USPTO that same day.

24. Summit itself also filed a Section 1(a) application for MUBAREK, Serial No. 99/703,816, on March 16, 2026. The same attorney filed a substantially similar Withdrawal of Attorney on August 15, 2026. The MUBAREK application is the subject of TTAB Opposition No. 91310405, filed by Guangzhou Jiahang Electronic Technology Co., Ltd. The opposition remains pending, and its allegations have not been adjudicated. Ex. D. As with PNAEONG, Summit's claimed first-use date of September 28, 2023 matches the "Date First Available" shown on the third-party Amazon listing it submitted as its specimen.

25. USPTO records further reveal overlapping correspondence information connecting Walker, Summit, and the attorney involved in the applications. Walker's PNAEONG correspondence address and Summit's MUBAREK correspondence address both include "#14088," as does the original attorney's recorded address. The PNAEONG and MUBAREK records also identify the same three additional correspondence email addresses: greg@sach-associates.com, tony@youiphub.com, and filing@youiphub.com. Walker's correspondence email, m40908z32@zznoo.com, is also closely similar to m40908z@zznoo.com, listed on the September 3, 2026 assignment cover sheet submitted on Summit's behalf. Exs. B, C, D.

26. The substantially similar applications, attorney withdrawals, same-day assignments, and overlapping correspondence information support a reasonable inference of coordinated trademark acquisition activities. On information and belief, Summit knowingly participated in or facilitated the procurement of the '120 Registration through materially false representations of trademark ownership and use.

**Summit's Amazon Infringement Complaints**

27. On November 15, 2026, Amazon notified Hengshengchang that Summit had submitted trademark infringement Complaint No. 23057656151, asserting the '120 Registration against 24 distinct ASINs for PNAEONG-branded women's lounge pants and identifying those listings as at risk of deactivation. Ex. E.

28. Summit also asserted the '120 Registration through Complaint Nos. 23057683071, 23057690531, 23058579871, and 23057522301. In its complaints, Summit alleged that Hengshengchang's use of PNAEONG in product titles constituted trademark infringement, demanded removal of the identified products, and reserved the right to pursue further legal action. Amazon subsequently issued notices confirming that certain listings had been deactivated and others remained at risk. Ex. E.

29. Notably, Summit's Complaint No. 23058579871 targeted ASIN B0C4T46P7V—the same ASIN appearing in the Amazon listing Walker submitted to the USPTO as purported evidence of his own trademark use. Summit thus

asserted the resulting registration against the very product listing used to support Walker's application. Exs. B, E.

30. Summit's repeated infringement complaints caused Amazon to deactivate certain PNAEONG listings and placed additional listings at risk of deactivation, disrupting Hengshengchang's sales through its Amoy-baby storefront and causing lost sales and other economic harm. Ex. E.

31. Collectively, the Amazon complaints and Hengshengchang's business records identify 221 distinct ASINs associated with the dispute, as set forth in the consolidated schedule attached as Exhibit I.

32. Hengshengchang disputes Summit's infringement allegations because its use of PNAEONG is authorized by Zhang, whose trademark rights predate Walker's application and Summit's acquisition of the '120 Registration.

## COUNT I
## Civil Liability for False or Fraudulent Trademark Registration
## (15 U.S.C. § 1120)

33. Hengshengchang incorporates the preceding paragraphs as though fully set forth herein.

34. Walker filed the application resulting in the '120 Registration through materially false representations of ownership and use of PNAEONG in commerce. As purported evidence of his own trademark use, Walker submitted an Amazon product listing identifying Amoy-baby as the seller, despite lacking ownership of or authorization to use PNAEONG.

35. On information and belief, Walker knowingly caused these materially false representations to be submitted with the specific intent to deceive the USPTO. The representations concerning ownership and qualifying trademark use were material to registration, and the application would not have resulted in the ’120 Registration had the true facts been disclosed.

36. On June 20, 2026, Summit acquired Walker’s pending application after the original attorney had expressly disavowed the application declaration and supporting representations. The acquisition was one of six substantially similar application transfers to Summit following substantially identical attorney withdrawals. The ’120 Registration subsequently issued on June 30, 2026.

37. On information and belief, Summit knowingly participated in procuring the ’120 Registration through these coordinated acquisition activities. The same-day assignments, overlapping correspondence information connecting Walker and Summit, and Summit’s acquisition of the pending application after the attorney’s disavowal support an inference of Summit’s knowing participation. Summit allowed the application to proceed to registration without correcting the materially false ownership and use representations.

38. Summit subsequently relied on the ’120 Registration to submit repeated trademark infringement complaints against Hengshengchang, including a complaint targeting ASIN B0C4T46P7V, the same ASIN appearing in Walker’s original specimen. As a direct and proximate result of the procurement and

enforcement of the registration, Amazon deactivated certain PNAEONG listings, disrupting Hengshengchang's sales and causing lost profits and other economic damages.

39. Summit is liable to Hengshengchang under 15 U.S.C. § 1120 for damages sustained as a consequence of the false or fraudulent procurement of the '120 Registration.

**COUNT II**
**Declaratory Judgment of Non-Infringement and Invalidity**
**(28 U.S.C. §§ 2201–2202)**

40. Hengshengchang incorporates the preceding paragraphs as though fully set forth herein.

41. Summit has repeatedly asserted the '120 Registration against Hengshengchang's PNAEONG-branded products through Amazon trademark infringement complaints, demanded removal of the challenged listings, and threatened further legal action. These enforcement activities have created an actual and substantial controversy concerning Hengshengchang's right to continue using PNAEONG and the validity and enforceability of the '120 Registration.

42. Hengshengchang uses PNAEONG with the authorization of Zhang Li, whose trademark rights predate Walker's application. Amazon order-management records for the Amoy-baby storefront reflect sales of PNAEONG-branded pajama sets in April 2023, before Walker's claimed first-use date. Neither Zhang nor Hengshengchang transferred the PNAEONG mark to Walker or Summit or

authorized either to claim ownership of the mark.

43. Walker's application relied on an Amazon specimen identifying Amoybaby, rather than Walker, as the seller. As alleged above, Walker lacked ownership of PNAEONG and qualifying trademark use attributable to him. Summit's subsequent acquisition of the application did not cure those defects or the fraudulent procurement underlying the '120 Registration.

44. Accordingly, Hengshengchang seeks a declaration that (a) its authorized use of PNAEONG in connection with the products at issue does not infringe any trademark rights asserted by Summit under the '120 Registration; and (b) the '120 Registration is invalid and unenforceable for lack of ownership, lack of qualifying use in commerce, and fraudulent procurement.

## COUNT III
## Cancellation of U.S. Trademark Registration No. 8,325,120
## (15 U.S.C. § 1119)

45. Hengshengchang incorporates the preceding paragraphs as though fully set forth herein.

46. Summit is the record owner of the '120 Registration and has repeatedly asserted it against Hengshengchang through Amazon trademark infringement complaints. Hengshengchang has suffered injury from those assertions and seeks cancellation of the registration as relief ancillary to the actual controversy between the parties.

47. Zhang Li acquired ownership of PNAEONG and its associated goodwill

in 2019. Hengshengchang currently uses the mark with Zhang's authorization, and Order-management records for the Amoy-baby storefront establish sales of PNAEONG-branded pajama sets in April 2023, before Walker's claimed first-use date. Although Zhang's prior registration was administratively cancelled in 2025 for failure to file an acceptable Section 8 declaration, that cancellation did not, by itself, extinguish his underlying common-law trademark rights. Exs. A, G, H.

48. On December 12, 2025, Walker filed a Section 1(a) application for PNAEONG, claiming ownership and use in commerce in connection with "Pajamas." As purported evidence of his use, Walker submitted an Amazon listing for a women's nightgown that expressly identified Amoy-baby, rather than Walker, as the seller. Neither Zhang nor Hengshengchang assigned PNAEONG to Walker or authorized him to rely on Amoy-baby's commercial activities as evidence of his own trademark use. The attorney who signed the original application declaration subsequently disavowed its verification and supporting representations on June 11, 2026. Exs. B, C, F, H.

49. As alleged above, Walker's application was one of six substantially similar applications associated with the same attorney, followed by substantially identical attorney withdrawals and assignments to Summit on June 20, 2026. Summit acquired Walker's pending application after the attorney's disavowal, and the '120 Registration issued on June 30, 2026. On information and belief, Summit knowingly participated in the coordinated acquisition activities and acquired the

application with knowledge of the material misrepresentations underlying it.

50. The ’120 Registration is invalid because Walker was not the owner of PNAEONG when he filed his Section 1(a) application. The application was therefore void ab initio under 15 U.S.C. § 1051(a)(1), and the subsequent assignment to Summit could not cure that defect.

51. The ’120 Registration is independently invalid because, on information and belief, Walker had not made qualifying use of PNAEONG in commerce attributable to him in connection with the identified goods, “Pajamas,” as of the application filing date. The submitted specimen depicted a women’s nightgown offered for sale by Amoy-baby, not Walker. The specimen therefore did not establish qualifying trademark use by Walker on the goods identified in his application. 15 U.S.C. § 1051(a)(1).

52. The ’120 Registration was fraudulently procured through knowingly false and material representations concerning trademark ownership and use in commerce, made with the specific intent to deceive the USPTO. Walker caused Hengshengchang’s Amoy-baby product listing to be submitted as purported evidence of his own trademark use, falsely claimed entitlement to register PNAEONG, and represented that the specimen supported registration in his name. The identity of the actual seller was apparent on the face of the specimen. The original attorney’s subsequent disavowal, together with the coordinated application and assignment activities described above, further supports the inference of

fraudulent intent. 15 U.S.C. § 1064(3).

53. The ’120 Registration is also subject to cancellation under 15 U.S.C. § 1052(d) because Zhang’s prior rights in the PNAEONG mark predate Walker’s application. Zhang acquired the mark and its associated goodwill in 2019, and PNAEONG-branded pajama sets were sold in U.S. commerce through the Amoy-baby storefront by April 2023. Zhang’s prior rights had not been abandoned when Walker filed his application. The marks are identical, and the goods identified in the ’120 Registration, “Pajamas,” overlap with the apparel sold under Zhang’s mark. Registration of the identical mark in Summit’s chain of title is therefore likely to cause confusion concerning the source, sponsorship, or affiliation of the goods. 15 U.S.C. §§ 1052(d), 1064(1).

54. Accordingly, Hengshengchang requests that the Court declare the ’120 Registration invalid, order its cancellation under 15 U.S.C. § 1119, and direct that the cancellation order be certified to the Director of the USPTO.

**COUNT IV**
**(Intentional Interference with Prospective Contractual Relations)**

55. Hengshengchang incorporates the preceding paragraphs as though fully set forth herein.

56. Hengshengchang regularly sold PNAEONG-branded products through its Amoy-baby Amazon storefront. Its established sales history and active product listings, including the specific ASINs identified in Exhibit I, provided concrete opportunities for prospective sales transactions with Amazon customers.

57. Summit knew that Hengshengchang sold its products through Amazon and that trademark infringement complaints could cause Amazon to deactivate the challenged listings, thereby preventing customers from purchasing the affected products.

58. On information and belief, Summit intentionally interfered with Hengshengchang's prospective sales transactions through improper means by submitting knowingly false and materially misleading trademark infringement complaints to Amazon. As alleged above, Summit relied on the '120 Registration despite the circumstances surrounding Walker's lack of ownership, unauthorized use of Amoy-baby's product listing as a trademark specimen, and fraudulent procurement of the registration. Moreover, although the '120 Registration identifies only "Pajamas," Summit's complaints targeted a broader range of PNAEONG-branded apparel, including women's sweatpants, lounge pants, and nightgowns, and represented to Amazon that the use of PNAEONG in those product titles infringed Summit's "registered trademark." Exs. C, E.

59. As a direct result of Summit's infringement complaints, Amazon deactivated multiple PNAEONG product listings in November 2026, immediately before the Black Friday and holiday shopping season. Amazon's deactivation notices confirm that the affected products were no longer available for purchase through those listings. Ex. E. These deactivations prevented prospective customers from purchasing the affected products and disrupted Hengshengchang's ongoing sales

opportunities during a commercially significant shopping period.

60. Summit's intentional interference has caused Hengshengchang to lose sales and profits and to suffer other resulting economic damages. Unless the affected listings are restored, Hengshengchang faces additional lost sales and profits during the upcoming Black Friday and holiday shopping season. These injuries are a direct and foreseeable consequence of Summit's wrongful conduct.

## PRAYER FOR RELIEF

Hengshengchang requests that the Court:

A. Declare that Hengshengchang's authorized use of PNAEONG in connection with the products at issue does not infringe any trademark rights asserted by Summit under U.S. Trademark Registration No. 8,325,120, and that the registration is invalid, including for lack of ownership, lack of qualifying use in commerce, and fraudulent procurement through materially false representations based on Hengshengchang's own Amazon product listing;

B. Order cancellation of U.S. Trademark Registration No. 8,325,120 under 15 U.S.C. § 1119 and direct that the cancellation order be certified to the Director of the USPTO;

C. Upon the requisite equitable showing, order Summit to withdraw all trademark infringement complaints submitted to Amazon against Hengshengchang, its Amoy-baby storefront, or its authorized PNAEONG-branded products based on the '120 Registration, including, without limitation, Complaint

Nos. 23057656151, 23057683071, 23057690531, 23058579871, and 23057522301, together with any additional complaints; require Summit to notify Amazon in writing of those withdrawals; and permanently enjoin Summit and persons bound under Federal Rule of Civil Procedure 65(d)(2) from submitting, maintaining, renewing, or causing the submission of further such complaints based on the ’120 Registration or trademark rights purportedly arising from Walker’s December 12, 2025 application;

D. Award Hengshengchang compensatory damages under 15 U.S.C. § 1120 for injuries sustained as a consequence of the false or fraudulent procurement of the ’120 Registration, including proven lost profits and other resulting economic losses;

E. Alternatively, award Hengshengchang compensatory damages for Summit’s intentional interference with its prospective contractual relations, without duplicative recovery; and

F. Award costs, reasonable attorney’s fees, and applicable interest to the extent authorized by law, and grant such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 21, 2026

Respectfully submitted,

/s/ Tao Liu

Tao Liu
GLACIER LAW LLP
41 Madison Avenue, Suite 2529
New York, NY 10010
Telephone: (212) 937-9999
Email: tao.liu@glacier.law

***Counsel for Plaintiff***